## Bell *against* Hartley.

In an action of ejectment, upon the plea of the Statute of Limitations, a declaration of the defendant, that he was willing to purchase from the plaintiff, made more than 21 years before suit brought, will not prevent the operation of the statute.

An actual adverse possession of land for 21 years, gives title not only to that part of it which was cleared and cultivated, but to all that was included within marked lines during that period.

ERROR to the Common Pleas of *Susquehanna* county.

William Hartley against Calvin Bell.   This was an action of ejectment for a tract of land, containing 100 acres, for which the plaintiff gave in evidence a regular chain of title from the commonwealth down to himself.   The defendant claimed under a possession first taken of it by his father, in 1799, after purchasing a small improvement made upon it by a Bryant Robinson; who, from the

[Bell v. Hartley.]

time he took possession in 1799, continued to reside thereon with his family until 1814 or 1815, when he sold it to the defendant, in consideration that the latter would support and maintain his father and mother during the remainder of their respective lives. This he accordingly did. At the time the father disposed of the land to the defendant, he had erected a dwelling-house and other buildings besides having cleared from 60 to 70 acres upon it. From 1813 to 1840, inclusive, the father or the defendant appeared to have been assessed every year with 200 acres, embracing the land in dispute. In 1818 the defendant had a survey made of his claim, and the lines thereof distinctly marked on the ground, which, according to the calculation of the artist employed for that purpose, contained 200 acres, but according to a survey and calculation made by another artist, in 1840, it was said to contain 400 acres. The defendant, from 1818, when he had the boundaries of his claim marked out upon the ground, as well as before, from the time he obtained it of his father, continued to reside thereon, clearing, improving and cultivating the land within it, and using the whole as a farm to the full extent of his boundaries.

Upon this state of facts the defendant claimed to hold the land in question by force of the Statute of Limitations, having been in the adverse and exclusive possession of it for upwards of 21 years before the commencement of this action, which was not brought until the commencement of 1840.

The plaintiff, however, to repel the operation of the statute, offered to give in evidence the deposition of Isaac Torrey, regularly taken under a rule of court in the cause, showing that the witness, in 1803, at the request of John Fields, from whom the plaintiff derived his title to the land, and who was at that time unquestionably the owner of it, went to view it, with many other tracts of land which Fields had there, for the purpose of ascertaining whether any persons were settled thereon or not; and if so, who they were, and under what pretensions they had done so; and also to ascertain the appearance and quality of the whole body of lands claimed there at that time by Fields; that in doing so, he found the father of the defendant settled, with his family, upon the land in dispute, who admitted that the land upon which he was then settled belonged to one Fields, according to a current report; that he himself had no title to it, but wished to purchase it as soon as an opportunity should be presented of doing so. This evidence, however, was objected to by the defendant and overruled by the court.

The plaintiff also took the ground that he was entitled, at all events, to recover all that part of the tract which was not embraced within the cleared land of the defendants. But the court below (Conyngham, President), instructed the jury that the defendant was entitled to hold all the land which was included within his marked lines, and claimed adversely for 21 years.

The rejection of the evidence and this instruction of the court to the jury were the subjects of the errors assigned.

*Case* and *Williston*, for plaintiff in error. The admission of the defendant that he had no title, and his declaration that the plaintiff had the title, and that he was willing to purchase it, were calculated to lull the plaintiff into security that the holding was not adverse; in fact, it was an acknowledgment that he did not claim the land, but wanted to purchase it; the evidence should, therefore, have been received to rebut the effect of the statute. 5 *Watts* 348. On the second point they cited 3 *Watts* 345.

*Lusk, contra.* The defendant had no knowledge of the plaintiff's title; he had heard Fields claimed it, and the amount of his declaration was, that if there was another title he would be disposed to purchase it. He did not attempt to make the impression that he would create any relation as to the land between him and Fields. But since that time his possession has certainly been adverse for 21 years. 10 *Watts* 261; 4 *Whart.* 259. As to the second point, the case in 7 *Watts* 35 rules this.

The opinion of the Court was delivered by

KENNEDY, J.—If the evidence offered had tended to prove a tenancy or holding of the land, on the part of Bell, the father, under Fields, it might, perhaps, have been admissible, notwithstanding the great lapse of time, so as to have left it to the jury to say what bearing it had on the fact of an ouster having been committed by Bell, and his having had an adverse possession of the land 21 years before the institution of this action. But we are clearly of opinion that it could not be regarded as having any such tendency. It did not even show the semblance of a contract between Fields and Bell, whereby the latter agreed to hold the land in any way whatever under the former. Notwithstanding all that Bell said, Fields might have brought his action of ejectment the next day, or at any time afterwards, for the purpose of turning Bell out of the possession; and Bell, on the other hand, might have set up, as a defence, a better title than Fields outstanding in a third person, if any such existed; for nothing had passed between Torrey, as the agent of Fields and Bell, that could possibly raise or impose an obligation of any kind on either. Nor, from all that was said by Bell, had Fields any reason to believe, if he suffered Bell to remain 21 years in the possession of the land without making an entry thereon, or bringing an action of ejectment against Bell, that the latter would not set up the Statute of Limitations as a bar to his recovery. So that the evidence offered neither tended to prove anything that could be construed into an agreement by Bell to hold the land under or subject to the control of Fields, nor yet into a fraud, if he at any time subsequently denied the title of

Fields to the land.   The evidence was, therefore, properly rejected by the court.   See *Sailor* v. *Hertzog*, (4 *Whart.* 259); *Farmers' and Mechanics' Bank* v. *Wilson*, (10 *Watts* 261).

The two remaining errors raise the same question, and will, therefore, be considered together.   This was, whether the plaintiff was not entitled to recover all the unimproved land within his claim of 100 acres, that was also included within the boundaries of the defendant's claim as surveyed and marked out by him on the ground.   The learned President Judge, on this question, instructed the jury as follows: " But the plaintiff contends, that as to the balance of the 100 acres, the defendant can have no claim at all.   We charge you to the contrary of this.   If the defendant caused a survey of his claim to be made upon the ground upwards of 21 years before this suit brought, had his lines marked, and has subsequently, at all times, living upon the land, claimed up to these lines, and has paid taxes, as appears by the assessments for 200 acres, double the now claimed quantity of 100 acres, while the plaintiff does not show that he or those under whom he claims, have ever paid a solitary tax for the tract or any part of it, the defendant may hold the 100 acres now claimed, if it is within the lines of his claim aforesaid, particularly if you believe the witnesses, who state that the surveyor who ran out the defendant's claim, mistakingly supposed or represented that the survey contained only 200 acres, the quantity for which the defendant has since fairly paid the taxes, though the real quantity by the late survey seems to be about 400 acres."   We can perceive no error in this instruction of the court to the jury.   If the Statute of Limitations is to have an operation according to what would seem to have been the intention and design of the Legislature in passing it, we think the charge of the court, in respect to it, was quite as favourable to the plaintiff as he had any right to claim.   It is in conformity to. the doctrine laid down in *Royer* v. *Benlow*, (10 *Serg. & Rawle* 303); *Heiser* v. *Riehle*, (7 *Watts* 37); *Criswell* v. *Altemus*, (7 *Watts* 580).

Judgment affirmed.